ELIJAH ALDEN *vs.* GAMALIEL ROUNSEVILLE & others.

This article was inserted in the warrant for a town meeting: "To act any thing in relation to the limits of school districts, that the town may see cause:" When the town came to act on this article, a petition from the inhabitants of four school districts was presented, and the town voted to refer the whole subject to the selectmen: At an adjourned meeting, the selectmen made a report, recommending that said four districts be made into three only ; and their report was recommitted to them, " to divide said districts:" In the warrant for a subsequent town meeting

were these articles : "To hear all reports of committees and act thereon:" "To act any thing in relation to the limits of school districts, or relating to individuals, or parts of districts, who may wish to be set off from one district to another," &c. *Held,* that these articles were sufficient to authorize the town, at the last meeting, to accept the report of the selectmen, making three districts out of said four, and to establish those three districts.

In the formation of a school district, it is not necessary that all the territory included in it should be within continuous geographical lines. Where a district is laid out by such lines, and then certain individuals, with their polls and estates, are added hereto, this operates as a permanent annexation of those individuals and their real estates to the district, and does not violate the rule which requires districts to be established by geographical limits.

A committee, appointed by a town to divide certain school districts, made four districts into three, and returned their report to the town : The town voted, at a meeting on the 1st of March, to accept said report, and recommitted it to the same committee, "for the purpose of setting up the bounds and monuments :" The committee, about a week afterwards, returned to the town clerk a report of their making said four districts into three, "as per vote of the town, March 1st," and the clerk forthwith recorded it. *Held,* that said three districts were legally established.

TRESPASS for breach and entry of the plaintiff's close and taking away two of his heifers. The following facts were agreed on by the parties :

The defendants, in 1841, were assessors of the town of Middleborough, and on the 13th of December in that year assessed a tax, in due form, upon the plaintiff and others, as constituting school district No. 23 in said town, and committed it, for collection, to the collector of taxes for the town, who entered the plaintiff's close and distrained for said tax.

In the year 1809, the whole of said town was divided and formed into school districts, and the plaintiff and his estate were included in district No. 20. In that year he paid a tax that was assessed for the building of a school house in that district, and has not since changed his residence.

In the warrant for a meeting of said town, held on the 2d of March 1840, there was this article : " To act any thing in relation to the limits of school districts that the town may see cause." Under this article, the town received a petition from the inhabitants of school districts Nos. 34, 20, 21 and 23, stating that they were " desirous that said districts should be districted anew." The whole subject was thereupon referred to the selectmen, and the meeting was afterwards adjourned to the 26th of October 1840. At the adjourned meeting, the select

men made a report, recommending that said four districts should be made into three only. That report was recommitted to the selectmen, as a committee " to divide said districts."

The fifth article in the warrant for the meeting of said town on the 1st of March 1841 was, " to hear all reports of committees, and act thereon ; " and the thirteenth article was, " to act any thing in relation to the limits of school districts, or relating to individuals, or parts of districts, who may wish to be set off from one district to another, in or out of this town, into an adjoining town." The record of the vote on said thirteenth article was thus : " Voted to accept of a report made by the committee to district anew districts Nos. 34, 20, 21 and 23, which report makes three out of the four ; said report was recommitted for the purpose of setting up the bounds and monuments." The said three districts were designated, in said report, as Nos. 20, 21 and 23 ; and the plaintiff and his estate were within the limits of district No. 23. These limits are described, as in the paper which is copied in the margin.*

---

* School district No. 23 is bounded as follows : Beginning at the highway on the west side of the bridge, over Purchase Brook, so called, near the dwelling-house of Seth Eaton, Esq. ; thence southerly in a direct line to the highway south of the dwelling-house of Elias Randall, to a stake and stones, on the west side of said highway ; and the same stake and stones are a bound of said Randall's land ; thence south by the said highway, passing the dwellings of Consider Robbins, Abner Leonard and Alfred Randall, to the Taunton road, so called, to a stake and stones for a bound on the west side of the road aforesaid ; from thence, in a direct course passing north of Hercules Richmond's dwelling-house, and south of the dwelling-house where Jonathan Drake now lives; crossing the turnpike road, south of the dwelling-house of Luther C. Macomber, to the junction of the second branch of Trout Brook, so called, below the tack factory; from thence down said Trout Brook to the elm tree named for a bound of school district No. 21, and standing on the north bank of said Trout Brook, and from thence northerly, by the line of school district No. 21, to the stake and stones on the south side of the highway between the dwelling-houses of Enos Drake and Josiah Robinson ; from thence northerly, in a direct course, by the line of school district No. 21, to the stake on the west side of the turnpike road, about 30 rods south of Deacon Job Alden's dwelling-house ; and the same is a bound of school districts Nos. 20 and 21 ; thence easterly, crossing the turnpike, by the line of school district No. 20, to the highway south of Reuel W. Eaton's dwelling-house ; and on the west side of said highway, at the corner of the lands of Seth Eaton, Esq. and Elijah Alden is a stake and stones for a bound, and is a bound also of school district No. 20; from thence northerly, by the said highway, to the

That paper was handed to the town clerk, by Gamaliel Rounseville, chairman of said committee, about a week after the meeting of March 1st 1841, and was forthwith recorded by said clerk.   Considerable portions of the inhabitants of the old districts, Nos. 20, 21 and 23, objected to the petition for districting anew, and sent to the town protests or remonstrances against said petition; but none of the inhabitants of district No. 34 made any objection to said proceedings.

The persons living within the lines which, by said proceeding, constitute district No. 23, held a district meeting, at which the plaintiff was not present, and voted to raise $175 for the purpose of providing a school house, and that vote was regularly notified to the defendants, who thereupon assessed the said sum on all the polls and estates of the persons aforesaid.   One half of district No. 20, as constituted in 1809, is included in the aforesaid lines of what is now called No. 23.   The district which, by the districting in 1809, was No. 23, had a school house sufficient for that district, when said assessment was made.

· *Eddy & Coffin,* for the plaintiff.   There was no article in the warrant for the meeting of March 2d 1840, which authorized the town to take any measures for abolishing a school district.   An alteration of the limits of existing districts was alone contemplated by the article.   *Waldron* v. *Lee,* 5 Pick. 334.   Nor did the articles in the warrant for the meeting of March 1st 1841 authorize the acts done at that meeting.   Rev. Sts. *c.* 15, § 21.   See *School District in Stoneham* v. *Richardson,* 23 Pick. 62.   The vote to recommit the report, after it

Purchase Brook and bridge, being the bound first named:  Thus bounded, to be inclusive and known as school district No. 23.

Also the following persons, having formerly belonged to the old school districts, and not being included in the new, are disposed of as follows:  That is, Capt. Charles White, Samuel Reed and Elias Randall, are annexed to school district No. 19, with all their polls and estates.   Enos Eaton and Daniel Savery are, with their polls and estates, set to district No. 18.   And Josiah Richmond, Eleazer Richmond, Silas Hathaway and Capt. Linus Washburn are, with their polls and estates, annexed to the Miller District, so called, or No. 22 district. As per vote of the town, March 1 1841.

Gamaliel Rounseville, per order.

19 *

was accepted, was inconsistent with the vote to accept it; and the subsequent return and recording do not constitute a legal record of the new districting. *Non constat* that the original report, when made to the town, was not an oral one.

Part of the inhabitants of some of the old districts were not included in the new ones by geographical limits, as is required by law. Rev. Sts. c. 23, § 24. *Withington* v. *Eveleth*, 7 Pick 106. *Perry* v. *Inhabitants of Dover*, 12 Pick. 213. The annexation of a person's estate to a district, does not "*determine* the limits of such district;" for the annexation is only for the life of such person. *Kingsbery* v. *Slack*, 8 Mass. 154.

An action of trespass against the assessors is the plaintiff's proper remedy; no other party being liable to him. 7 and 12 Pick. *ubi sup.* *Little* v. *Merrill*, 10 Pick. 543.

*W. Baylies,* for the defendants. The district, which voted to raise the tax in question, was legally established. It was not necessary, in order to alter a district, that the whole town should be districted anew. *Richards* v. *Dagget,* 4 Mass. 534 The articles in the warrants for the town meetings were appropriate to the matters which were voted, and sufficient to authorize the votes. *Blackburn* v. *Inhabitants of Walpole,* 9 Pick. 97. *Haven* v. *City of Lowell,* 5 Met. 35.

It is sufficient for the defence of this action, that district No. 23 was legally established. No question, as to the effect of the annexation of certain detached estates of individuals, arises in the present action. When that question shall arise, it will be found that the annexation has the same effect as if the estate annexed had been included in the limits previously described. *Colburn* v. *Ellis,* 7 Mass. 89. *Inhabitants of Cumberland* v. *Prince,* 6 Greenl. 408.

In *Perry* v. *Inhabitants of Dover,* cited for the plaintiff, the arrangement of the school districts was such, that certain persons belonged to no district. See also *Williams* v. *Inhabitants of Raynham,* 17 Pick. 344.

The action of the town, at the meeting of March 1st 1841 was irregular, but did not avoid the vote to accept the report of the districting committee.

The defendants cannot be held liable in an action of trespass. *Baker* v. *Allen*, 21 Pick. 382.

DEWEY, J. Various objections have been taken to the validity of the tax for the collection of which a warrant of distress was levied upon the plaintiff's property ; but none of them, in the opinion of the court, can avail the plaintiff.

It is insisted that the school district No. 23, for whose benefit and upon whose vote this tax was assessed, was not legally established : 1. Because there was no sufficient article in the warrants for calling the town meetings which acted upon the subject and established said district. This objection seems to us untenable. The language of the articles in the warrants is very broad, no less than this, in both ; " to act any thing in relation to the limits of school districts ; " and in the last, " to hear all reports of committees and act thereon." This, we think, was sufficient to authorize the town to proceed to establish district No. 23, and fix anew its boundaries.

2. It is objected that the proceedings of the town, in establishing the new districts, were illegal, by reason of the action of the town in assigning to other districts certain individuals, with their polls and estates, who were found not to be included in the limits of the new districts. The objection is, as we understand it, that all school districts should be established with territorial boundaries. Without expressing any opinion whether this objection would be open to the present plaintiff — inasmuch as school district No. 23 was well established in this respect, its boundaries being by geographical limits, and all its members those exclusively within these boundaries, and none of the inhabitants within these boundaries being excepted from the district, nor any resident upon a foreign territory, or without its limits, added to its members — we are of opinion that the formation of school districts, by the addition of individuals, with their polls and estates, to the territorial limits of a district, is in effect permanently adding to the district the real estate of such individuals, with its local boundaries, and embracing it within the limits of such district, and may therefore be considered as no violation of the principle that school dis-

tricts are to be established with geographical or territorial boundaries.

3. It was further urged, that the report of the committee of the town, districting anew the districts Nos. 20, 21, 23 and 34, and establishing three new districts therefrom, was not duly accepted by the town, by reason of the vote by which "said report was recommitted for the purpose of setting up the bounds and monuments."

Now we understand this to have been a mere act of the town, limited to the precise purpose stated in the vote. It certainly was not the best form or the most appropriate language that might have been used to effect this limited object; but taking the entire vote of the town on this occasion, and giving effect to that part of it in which the town " voted to accept of a report made by the committee to district anew districts Nos. 34, 20, 21 and 23," it seems quite obvious that the purpose of recommitment was none other than to cause the erection of proper monuments to designate the newly constituted districts. The town had voted to accept of this report, and nothing further seems to have been contemplated, but the making, more distinctly, of the lines of the new districts, by the actual setting up of bounds and monuments. Thus understanding the effect and object of this vote, we do not think it vacated and annulled the vote accepting the report and establishing the new districts.

*Judgment for the defendants.*